## Case No. 7,438.

### JOLLY v. BLANCHARD.

[1 Wash. C. C. 252.] [1]

Circuit Court, D. Pennsylvania. April Term, 1805.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

WASHINGTON, Circuit Justice. The letters from the plaintiff left, in my opinion, a great deal to the discretion of the defendant. If they could not be sold without sacrifices being made, the defendant was bound to re-ship them; and, in case of war, he advised, that the goods should be placed under the care of some American merchant. This is the substance of the two letters, of the 14th of April and 16th of June. The letter of the 8th July, is more positive in ordering the goods to be re-shipped, in case of danger that the French would evacuate the island. The defendant's answer to the plaintiff's first letter, seems to assign a plausible, if not a satisfactory reason, for retaining the property; and the new order, contained in that of the 14th of June, the defendant promises to obey, in his answer of the 29th of July. When the defendant received the plaintiff's letter of the 8th of July, does not appear; neither does it appear, when the prohibition took place. But, it is obvious, from the defendant's letter of the 29th of July, that, although he had not certainly heard of a declaration of war between England and France, yet, that partial acts of hostility had occurred on the coast of St. Domingo; and he states the commercial embarrassments they had produced, in pretty strong colours. But, whether, under all circumstances, it would have

been most prudent to ship the plaintiff's goods to America, or to retain them, might be extremely questionable. If I were called upon to decide upon the correspondence, I might probably differ in opinion from the arbitrators. But ought I, for this reason, to set aside their award?

In the case of Walker v. Smith [Case No. 17,087], the court refused to grant a new trial, although we were not satisfied with the verdict, and where we had heard the whole evidence laid before the jury. But, in this case, the arbitrators had the advantage of hearing the observations and acknowledgments of the defendant himself, as to the motives of his conduct, and it appears that they were, in some measure, governed in their opinions, by this species of evidence.

It was, perhaps, not going too far for the arbitrators to conclude, from the excuse so entirely relied upon by the defendant, that no other existed; and that, if it had not been for his claim upon the goods, for securing his advances, made on account 'of the plaintiff, he would have considered himself bound, by the order he had received, to return the goods. But, this excuse was by no means a sufficient one; and, I think the opinion of the arbitrators upon this point, was perfectly correct. An agent has a lien upon the property of his principal, for any balance due him; but, if he is ordered to part with the possession of such property, shall be disobey these orders, and retain goods, to a large amount, in order to satisfy an inconsiderable debt? This defendant might have retained such a part of the goods, as would have been sufficient to secure him; or he might have consigned the whole to his friend here, to deliver them up, on being paid what was due.

. Upon the whole, I do not think that the arbitrators have been guilty of those obvious mistakes, in matters of law or fact, which ought to invalidate their report.