## SANBORN v. MURPHY.

Arbitrators who are not restricted by the terms of the submission have power to decide, conclusively, all questions of law as well as of fact.

If the reference is limited by a provision that the award shall be made in accordance with legal principles, the referees will be bound by the limitation : and if in such a case they disregard or mistake the law, their award will be set aside.

If arbitrators, acting under a general and unrestricted submission, either do not undertake to govern their action and decision by the rules and principles of law, as applied in the courts, or, intending to decide in accordance with those rules and principles, but also intending, upon due consideration, to act and decide definitively upon the matters before them, without submitting their proceedings and judgment to the court for revision, their conclusions will not be disturbed and their award will be sustained.

This general rule admits of but one exception, which is that where the arbitrators have manifestly fallen into such an error with regard to facts or law in the case before them as must have prevented the free and fair exercise of their judgment, the award will be set aside.

This exception has reference not to an erroneous conclusion or judgment upon the application of the law—which will not avail to disturb the award—but to a manifest mistake, such as must have precluded the exercise of judgment.

It is a settled rule in the courts of law and equity that no presumption shall be raised for the sake of overturning an award, but every reasonable intendment shall be allowed to uphold it.

ASSUMPSIT by Greenough D. Sanborn against Thomas Murphy. The action was referred to arbitrators under a rule of court.

Their report being made to the court, the defendant moved to set aside and recommit the award.

The facts of the case are disclosed in the opinion of the court.

*Murray,* for the plaintiff.

*H. & G. A. Bingham,* for the defendant.

FOSTER, J. From the reserved case and the papers connected therewith, we collect the following facts:

In 1862, the plaintiff and defendant were owners and occupants of adjoining land, in Dorchester. On the 17th May, 1862, the plaintiff made application to the fence-viewers for the division of the fence between said lands. On the same day a notice was issued by the fence-viewers to the defendant, appointing a time and place for hearing the parties upon this application. This notice was served upon the defendant, by giving the same to him in hand. At the appointed time and place, June 2d, both parties met and were heard; and the fence-viewers made division between them, and their doings and the result were duly recorded on the same day. So far, the proceedings were in accordance with the provisions of chap. 142 Comp. Stat., the law then in force.

On the 7th June, the plaintiff made application to the fence-viewers to have the defendant's part of the fence so divided, adjudged insufficient and out of repair. Notice of a hearing upon this application was issued, which was served by leaving the same " at the last and usual place of abode " of the defendant, June 9. At the time appointed, the defendant did not appear. Upon the hearing *ex-parte*, his portion of the fence was adjudged insufficient, and a notice thereof was issued June 16, which on the 17th June was served by leaving the same " at his last and usual place of abode."

The defendant having neglected to repair the fence within the time limited by the order and notice of the fence-viewers, the plaintiff repaired the same, and subsequently made application to have the portion of the fence so repaired by him appraised. Whereupon, notice of this application and of a hearing appointed thereon was issued, which was served by leaving the same at the defendant's " last and usual place of abode." Upon this application a hearing was had, and the appraisal made at ten dollars; of which notice was given to the defendant by leaving the same " at his last and usual place of abode."

The defendant attended only the first hearing before the fence-viewers.

On the 14th Aug., 1865, the plaintiff brought his suit against the defendant to recover the fees of the fence-viewers, accrued at their several hearings, which had been advanced by the plaintiff, and twice the appraised value of the fence repaired by him, by virtue of the statute.

At the March trial term of court, 1867, the action was referred to arbitrators, mutually agreed upon, under a rule of court which recited that " the parties appear and agree to refer this action to the judgment and determination of " Keyes, Flint & Blodgett, " the report of whom or any two of them being made to this court and judgment being entered thereon, to be final and conclusive between the parties." The rule was in the common form, containing no restriction as to evidence or grounds of decision. The report was made by Blodgett & Flint, who awarded that the plaintiff recover $37.76 on his account set forth in his specification, and costs. The report did not state any of the facts nor refer any question to the court.

Upon the return of the report to the court, the defendant moved to set aside and recommit the award, on the ground that a majority of the arbitrators, undertaking to decide according to law, mistook the law.   The mistake alleged was in holding the defendant bound by those proceedings of the fence-viewers, of which, he alleged, he had no notice.

The question is whether, under all the circumstances and facts disclosed, it shall be considered that the referees have so far mistaken the law or their duty in the premises as to justify the court in setting aside the award.

We have seen that the rule was in the common form, containing no restriction as to evidence or grounds of decision.   No principle or rule of law and practice is more clearly settled in this State than that arbitrators who are not restricted by the terms of the submission have full power and authority to decide all questions of law as well as fact arising in the case before them, and that their decision upon questions of law discussed before them, deliberately and fairly made, is conclusive.   Parties may and often do limit a reference, by providing that the award shall be made in accordance with legal principles ; in which case the referees will be bound by the limitation ; and if in such case they disregard or mistake the law, their award will be set aside.   But where the submission is in general terms, as in this case, it will always be presumed that the parties not only place full confidence in the integrity, but rely also upon the ability and discretion of the men of their choice, and that they willingly constitute and appoint them judges of the law as well as of the facts.

In such cases, however different the judgment of the referees may be upon the law of the case, from the opinion entertained by the court, if the referees have acted honestly, their award will not be set aside.

Did the arbitrators in the present case undertake to limit themselves and their action by any conditions not annexed to the submission ?   We should naturally suppose that referees, not selected from the ranks of the legal profession, would not voluntarily assume to act upon strictly legal grounds ; still these may have done so.   In such case, however, being aware that their conclusions might be subject to revision, it would be natural that they should accompany their report with a statement of disputed facts, and of their application of legal principles to those facts, specifying the grounds of their legal conclusions ; and the fact that the majority who signed the report have not done so in this case, and that the other arbitrator has not submitted a minority or dissenting report, is in our opinion a very strong indication that the referees did *not* consider themselves restricted in their functions, and did not assume to govern themselves by the strict rules of law and evidence, as practised and administered by the courts.

But upon this point the evidence is conflicting.   The chairman of the board and the defendant's counsel both testify that they supposed the board to be governed by the strict rules of law and bound to a correct application of those rules to the evidence ; that for this reason

the chairman kept full and careful notes of the evidence, of the rulings of the referees, and of the objections and exceptions thereto; while one of the other referees swears that "in making a decision of all the questions of law that arose before us, I did not undertake to decide strictly according to the rules of law, for I was not a lawyer or a judge of law, but did decide all the questions that arose between the parties, as seemed to me to be just and right between party and party, not confining myself to the strict rules of law, for those I did not know, and so stated."

And the other referee swears that "in making my decision I acted as it seemed to me to be just and right. I did not intend to confine myself to the rules of law strictly, for those I did not claim to know; for it was claimed both ways by the counsel who tried the case for the parties; but decided according to what seemed to me to be equitable and right between the parties, and Mr. John Flint and myself made our report accordingly."

We see no reason to doubt that all the referees acted fairly and honestly, and upon the whole we should feel bound to regard the fact to be as declared under oath by the majority of the board, (notwithstanding the different view of the matter, as honestly entertained by the chairman and the defendant's counsel,) if it were necessary for us to pass our definitive judgment and to found our conclusions upon the settlement of this question.

We do not, however, deem it necessary to decide this matter. The main question before the referees was, whether the defendant had actual notice of the proceedings before the fence-viewers subsequent to their first hearing; and, if not, whether he had legal, constructive notice. Upon this question of fact, evidence which it is unnecessary to recapitulate was received from both sides and fully considered; and upon the question of constructive notice and its legal and equitable effect, there was much discussion by counsel on both sides, and full deliberation, consideration, examination, conflict of views, comparison, and final decision by the referees.

Now, however much the referees may have *intended* to decide the questions of law before them in accordance with what they believed to *be* the law, we are clearly of the opinion that they did *not* intend that their judgment, whether correct or erroneous, should be overruled by the court. If they *had* so intended, they would have reported to the court the facts shown, the questions raised, the principles of law decided, and their application by the referees to the facts of the case.

And we have no hesitation in declaring that the law, as settled by a long series of authorities in this State, is this; that if arbitrators, under a general and unrestricted submission, either do not undertake to govern their action and decision by the rules and principles of law as applied in the courts; or, intending to decide in accordance with those rules and principles, but also intending, upon due consideration, to act and decide definitively upon the matters before them, without submitting their proceedings and judgment to the court for revision, their conclusions will not be disturbed, and their award will be sus-

tained. *Johnson* v. *Noble*, 13 N. H. 291, and authorities cited ; 2 Story's Eq. Jur. 677–8.

The only exception to this general rule (and it is one which being clearly sustained would avail to set aside the award) is the case where the arbitrators have manifestly fallen into such an error with regard to facts or law in the case before them as must have prevented the free and fair exercise of their judgment upon the subject submitted to them.

But, in the language of Mr. Ch. J. BELL, " where the sole ground of exception to their award is that upon a material point of law, upon which the rights of the parties depended, upon which the parties were fully heard by their counsel, upon which there was room for discussion and for much diversity of opinion, the arbitrators, after exercising their best judgment, have arrived at a conclusion which we are asked to consider and to pronounce to be erroneous ;—such an exception cannot be sustained. The parties have selected their own judges, they have deliberately submitted the matter to' their decision, and by that decision they are bound." *White Mts. R. R.* v. *Beane*, 39 N. H. 109.

The language above recited covers the whole ground of this case, and there is no such palpable error or mistake of fact or law as to bring the case within the exception referred to. The exception has reference, it will be understood, not to an erroneous conclusion or judgment upon the application of the law, but to a manifest mistake, *such as must have precluded the exercise of judgment.*

In the case before the referees, it was conceded that the law required notice to the defendant of proceedings before the fence-viewers. There was no mistake with regard to the law in this particular ; but the question was whether, by leaving a notice at the defendant's house, in his absence, the requirements of the law had been fulfilled. It appeared that the defendant was present and was heard before the fence-viewers upon the original application, and that the result was such as to indicate to him his duty with regard to the repair and maintenance of his portion of the fence. The result immediately became a matter of record upon the books of the town. Being presumed to know the law, it might well have been suggested that the defendant was put upon inquiry as to the results likely to flow from his failure to comply with the judgment of the fence-viewers at the hearing in which he took a part.

Whether any such considerations were or were not presented to these referees, upon which they might be called to consider the legal requirements with regard to actual notice, still, in view of the conflicting evidence with regard to the temporary absence of the defendant from home, and the question, which was raised, as to his visits there, during the period of the pendency of the proceedings before the fence-viewers, it is clearly apparent that the questions of fact and law were so fully discussed before the referees as to preclude the idea that they did not exercise an intelligent and deliberate judgment upon a full view of the whole case.

This is not a case, then, in which referees, intending to decide the

law as well as the facts, but *not* intending to bind the parties definitively by their possibly mistaken conclusions in matters of law, have referred the law to the court for revision, either by express reference, or impliedly, by stating in their report the grounds of their decision. In such a case, an apparent mistake of law would be corrected and the award set aside, not for want of authority in the referees to decide contrary to the strict rules of law, but because it would be apparent that, having mistaken the law, the award was not such as the referees intended to make.

And therefore the case is not in conflict with the general principles heretofore stated as applicable to an unrestricted submission under the common rule. See *Greenough* v. *Rolfe*, 4 N. H. 357 ; *Johnson* v. *Noble*, 13 N. H. 286 ; *Bean* v. *Wendell*, 22 N. H. 582 ; *Pike* v. *Gage*, 29 N. H. 470 ; *Severance* v. *Hilton*, 32 N. H. 289 ; *White Mountains R. R.* v. *Beane*, before cited ; *Cushman* v. *Wooster*, 45 N. H. 413 ; *Jones* v. *Boston Mill Corp.*, 6 Pick. 148 ; *Bigelow* v. *Newell*, 10 Pick. 348 ; *Boston Water Power Co.* v. *Gray*, 6 Met. 131 ; *Ward* v. *American Bank*, 7 Met. 486 ; *Wohlenberg* v. *Lageman*, 6 Taunton 251 ; *Ringer* v. *Joyce*, 4 Eng. Com. Law 469 ; *Hewlett* v. *Laycock*, 2 C. and P. 574 ; *Kent* v. *Elstob*, 3 East. 18 ; Cald. on Arb. (2 Am. ed.) 140 to 158, and notes.

In the case from 6 Pick. (which is very full and clear upon the subject before us), Mr. Ch. J. PARKER seems to have found difficulty in reconciling some apparently contradictory English decisions. These decisions are in the cases of *Kent* v. *Elstob*, 3 East. 18, and *Chace* v. *Westmore*, 13 East. 351. We refer to them in order that counsel, if they desire, may examine and compare them, and see whether, on the whole, there is in reality any substantial conflict between them. In the one case the error was raised by the pleadings and appeared on the face of the award. In the other case it was brought before the court by the affidavit of the arbitrator. In the *former* case the court examined and passed upon the question ; in the latter they did not. It seems to me, the result in either case is not in conflict with the principle that the court will not interfere unless the error is brought before them in some such way as to preclude the idea that the arbitrators had been regarded as the tribunal of last resort. I observe that Mr. Caldwell in his learned treatise finds no difficulty in dealing with these two cases. However that may be, the learned judge in *Jones* v. *The Corporation*, comes to this conclusion,—that if there is no definite rule on the subject in the English books, " yet there ought to be, and must be, some principle by which questions of this kind are to be settled. We take one principle to be very clear, which is, that where it manifestly appears by the submission that the parties intended to leave the whole matter, law and fact, to the decision of arbitrators or referees, the award is conclusive, although they should have mistaken the law, unless the award itself refers such question to the consideration of the court."

It is moreover a maxim of the courts, both of law and equity, never to raise a presumption for the sake of overturning an award, but on the contrary to make every reasonable intendment in its support. 1

Stephens's N. P. 94; Broom's Legal Maxims *68; *Wood* v. *Griffith*, 1 Swanston 52; *Karthaus* v. *Ferrer*, 1 Pet. 222. Therefore it was held in *Piersons* v. *Hobbes*, 33 N. H. 31, that in order to justify the court in setting aside an award for mistake of law, the mistake must not only be apparent, and one which, under the peculiar circumstances of the submission and report, the court would have a *right* to correct, but the court must also be clearly satisfied that the arbitrators would not have made such a report had they known what the law was, because unless restricted by the terms of the submission they might, though fully understanding the law, lay it entirely out of consideration in making what they consider an equitable decision. See also *Richardson* v. *Nourse*, 3 B. and Ald. 240; *Knox* v. *Symmonds*, 1 Ves. Jr. 369; *Jolly* v. *Blanchard*, 1 Wash. C. C. 252; *James & ux.* v. *Thurston*, 1 Clif. C. C. 369; *Peters* v. *Pierce*, 8 Mass. 398.

The earlier English authorities cited might not at first view seem to be applicable to our law and practice, since in England the Stat. of 9 and 10 Wm. III, ch. 15, regulating proceedings upon awards, provides that the award shall be sustained unless it appear that the arbitrators were corrupt, or misbehaved themselves, or that the award was obtained by " *undue means.*" But the very broad and extensive construction of these words gives the court the power to revise the doings of the umpire with regard to *mistakes* committed by him in matters of law, in case where the umpire is a barrister. 2 Chitty Gen. Prac. 117.

Since, under our practice, no distinction is made between the jurisdiction and powers of referees under the common rule, whether they be learned in the law or only such practical business men, or honest and capable men, as the parties are willing to entrust with the decision of their cause, the same considerations apply as under the English rule, and render the English cases analogous and pertinent. But in England, at the present day, no distinction is recognized between legal arbitrators and others; and the award of a non-professional man is held as conclusive upon a question of law as the award of a legal arbitrator. *Jupp* v. *Grayson*, 1 Cromp. Mee. & Roscoe 523; *Fuller* v. *Fenwick*, 3 M. G. & S. 705.

Motion to set aside and recommit the award denied.

*Judgment on the report.*